CASE 23—FORFEITED BAIL BOND—OCTOBER 1.

## Yarbrough, &c., v. Commonwealth.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. BAIL.—It is no defense to a proceeding upon a forfeited bail bond that, at the time of the forfeiture, the accused was confined in prison in another State for a crime there committed, he having voluntarily left this State while out on bail.

2. SAME.—Where a defendant, whose bail bond has been forfeited, is surrendered or arrested before judgment is entered against his bail, the discretion of the court as to whether it will remit the whole or any part of the sum named in the bail bond is a judicial and not an arbitrary one, but its exercise will not be controlled by this court unless flagrantly abused.

3. FORMER JEOPARDY.—The discharge of a jury because of their failure to agree does not operate as an acquittal or as a bar to another trial, although discharged in the absence of the accused and while he is in jail.

Whether the bail can defend upon the ground that the prosecution has, in effect, been wiped out by the former jeopardy of the accused, is not necessary to determine, no such case being presented.

WEIR, WEIR & WALKER, R. W. SLACK AND R. S. TODD FOR APPELLANTS.

The discharge of the jury in the absence of the accused operated as a bar to any further prosecution of the accused for the offense charged in the indictment. (State v. Wilson, 19 Am. Rep., 719; Nolan v. State, 21 Am. Rep., 281; Criminal Code, sec. 183.)

---

* Parker v. Commonwealth, MS. Opinion, filed October 29, 1889.

Yarbrough, &c., v. Commonwealth.

Therefore, there was no longer any prosecution pending against him upon which he could have been tried, even if he had appeared at the time his bond was declared forfeited, and, therefore, the appellants are not liable on his bail bond. (Commonwealth v. Overby, 80 Ky., 212.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

1. Even if the accused was deprived of a constitutional right, by the discharge of the jury in his absence, it affirmatively appears that he was not prejudiced, and, therefore, it did not operate as a bar to a further prosecution. (Meece v. Commonwealth, 78 Ky., 586; Rutherford v. Commonwealth, 78 Ky., 639.)

2. But even if the action of the court in thus discharging the jury would have been a bar to a further prosecution, the sureties in the bail bond have no right to make the plea.

The purpose of the bond was to secure the presence of the accused. (Walker & Hubbard v. Commonwealth, 79 Ky., 292.)

The case of Commonwealth v. Overby, 80 Ky., 208, commented on, and distinguished from this case.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Thomas Lockard was put upon trial for house-breaking. The case was fully heard. The jury, after considering it for some time, came into court, and, in the enforced absence of the accused in jail upon the charge, reported that they could not agree; thereupon they were discharged.

Thereafter the appellants became his bail; and, upon being released, he went to Indiana, where he committed an offense, for which he was sent to the penitentiary of that State, and was there confined when the bail bond executed by the appellants was forfeited on account of his non-appearance. They resisted a judgment against them for the amount of the bond upon two grounds:

*First.* That Lockard, without their knowledge, had gone to Indiana, and was there confined in the penitentiary, under a judgment for crime, when the bond was

forfeited, and could not, therefore, appear here in court, or be produced for trial in this State in discharge of it.

*Second.* That by the mistrial, above mentioned, Lockard had been put in jeopardy; that the discharge of the jury without his consent, and while he was absent in jail upon the charge, was equivalent in law to an acquittal; and that the appellants were not, therefore, liable upon the bond, because, if he had appeared when it was forfeited, there was no prosecution pending against him upon which he could have been tried and convicted.

The appellants rely upon the case of the Commonwealth v. Overby, 80 Ky., 208, to support the first point. That case, however, is not analogous to this one. There, Overby executed a bond for the appearance of the accused in the State court to answer a charge of passing counterfeit United States treasury notes. The next day he was arrested by the United States authorities for the same offense, and was thereafter tried in the United States Court for Kentucky, and sentenced to the penitentiary. This court held that this exonerated the bail in the State court. The offense was the same. The United States court had jurisdiction. The accused had not voluntarily left the State, and been convicted of a different crime in another jurisdiction, as is the case here.

The object in requiring bail is to insure the attendance of the accused to answer the charge, and the orders and judgment of the court in reference to it; and our statute provides that the bail may, at any time before the forfeiture, exonerate themselves by surrendering him to the jailer of the county where the prose-

cution is pending; and one of the modes provided for doing so is through the aid of the peace officers of the State. There is, therefore, an implied obligation, upon the part of the Commonwealth, that the bail shall not be hindered in doing so by any authority within the limits of the State. This is the ground upon which the rule in the Overby case rests; and is entirely unlike a case where the bail, who have the friendly custody of the accused, and may prevent his departure from the State by a surrender of him at any time, permit him to leave the Commonwealth, and he is then arrested elsewhere for other crime. (Withrow v. Commonwealth, 1 Bush, 17.)

It is unnecessary to determine whether the bail can, where the prosecution has, in effect, been wiped out by the former jeopardy of the accused, avail themselves of it as a defense to the forfeiture of their undertaking that he shall, at all times, answer to the charge, and the orders of the court. The state of case presented does not raise the question.

One trial, and only one, is an elementary principle in criminal law. Any other rule would be tyranny in a free country. It, therefore, has constitutional sanction. Exceptions exist, from necessity, to the rule; but they should be few, and strictly guarded. They arise most frequently in cases where trials are begun, but not ended. Undoubtedly, jeopardy may attach without waiting for a verdict. In a combat, intended to be deadly, it cannot well be said one is not in danger until he is hit. If, however, a necessity exists for the discharge of the jury before the finding of a verdict, then the proper administration of justice requires that this should constitute an exception to the general rule.

To allow one charged with crime, however heinous, to go free because the jury had to be discharged by reason of the illness of a member of it, or the sudden sickness of the judge, would be a defeat of the end sought at the expense of reason. This necessity may arise in various forms. One is a mistrial from a failure of the jury to agree.

An arbitrary discharge of the jury without any cause would be a bar. In this case, however, the jury, after considering the case for some time, reported that they could not agree, and were then discharged. It is true this was done in the absence of the accused, and while he was in jail. Properly he should have been in court. He had a right to be there. Our Constitution, in substance, so provides, as well as section 183 of our Criminal Code. If he had been there, however, he could not have prevented the discharge of the jury. Under the circumstances, it was a matter altogether within the discretion of the trial judge. An exception by the accused, if he had been present, would have been unavailing; and this court, were he now here making the question, would answer it by saying that it was a matter discretionary with the lower court, and we will not, therefore, interfere.

In addition to this, it substantially appears affirmatively that the accused was not prejudiced by the court's action. The jury considered the case for some time. They then reported their disagreement to the court. He inquired of them as to the probability of their reaching an agreement, and was informed that there was none. They were then discharged.

We fail to see why the accused is to be regarded as

having been in jeopardy, and the mistrial as an end virtually of the prosecution, or as equivalent to an acquittal, because he was not present when the jury were discharged, any more than it would have been if he had been present. It was still merely a mistrial by the failure of the jury to agree; moreover, he was not prejudiced by the disregard of his constitutional right to be present at every stage of his trial, and in such case this court will not reverse the judgment. (Meece v. The Commonwealth, 78 Ky., 586.)

It follows if the action complained of would not have been available to Lockard, neither is it to the appellants.

After the forfeiture of the bond, but before the rendition of the judgment against them, they surrendered Lockard to the lower court, he having been discharged from the Indiana penitentiary. In consideration of this, the court rendered judgment against them for but two-thirds of the bond. It is now urged that it should have remitted it entirely, and that it was an abuse of discretion not to do so. Section 98 of the Criminal Code provides:

"If, before judgment is entered against the bail, the defendant be surrendered or arrested, the court may, at its discretion, remit the whole or part of the sum specified in the bail bond."

The discretion named is, of course, a judicial and not an arbitary one; but its exercise will not be controlled by this court, unless flagrantly abused, and that has not been done in this instance.

Judgment affirmed.